IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HOI THI DANG, INDIVIDUALLY, ON BEHALF OF THE ESTATE OF TOMMY CHEN VAN NGO, AND AS NEXT FRIEND OF CUONG THANH NGO AND PHONG THANH NGO; NGA KIM NGO; HUNG THANH NGO; HONG KIM NGO; LOAN KIM THI NGO; and DUNG KIM THI NGO, <br><br>Plaintiffs, <br><br>v. <br><br>HHH MARINE, INC. and MAXIE NGUYEN, <br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. G-04-534 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT HHH MARINE, INC.'S MOTION FOR SUMMARY JUDGMENT**

This case arises out of the disappearance of Tommy Ngo ("Ngo") while working aboard the F/V LOVELY JENNIE, a vessel owned by HHH Marine, Inc. ("HHH"). Now before the Court comes the HHH's Motion for Summary Judgment. For the reasons stated below, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

**I.     Background**

Ngo was employed as a shrimper on the F/V LOVELY JENNIE. On December 4, 2003, he had been working for over 30 hours with only two or three hours' rest. (Nguyen Dep. at 51-52.) At 10pm, Captain Ba Nguyen ("Nguyen") told Ngo to go to bed. (Nguyen Dep. at 22.) At 11pm, Nguyen went to wake Ngo. By 11:15, Nguyen realized that Ngo was no longer on the

vessel. (Nguyen Dep. at 24-25.) During his deposition, Nguyen first stated that he called the Coast Guard between 11:15 and 11:30 and then pulled up his nets and began searching for Ngo. (Nguyen Dep. at 25-26.) He then testified that he was not sure about the timing, and he would defer to the Coast Guard's records. (Nguyen Dep. at 32-33.) He also stated that he actually started searching only after he was told to do so by the Coast Guard. (Nguyen Dep. at 29, 32-33.) Coast Guard records show that Nguyen did not contact the Coast Guard until 12:36am on December 5, 2004, over an hour after he realized that Ngo had disappeared. (Pls. Ex. E.) At 1:10am, the Coast Guard instructed Nguyen to pull up his nets, inferring that for over two hours after discovering Ngo's disappearance, he kept right on fishing. (Pls. Ex. E.)

Ngo's wife and children ("Plaintiffs") have sued under both the Jones Act and general maritime law. HHH argues that it is entitled to summary judgment because Plaintiffs have failed to produce evidence of negligence or unseaworthiness. Alternatively, HHH argues that it is entitled to summary judgment as a matter of law on Plaintiffs' claims for non-pecuniary damages.

## II.     Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III. Analysis**

*A. Non-Pecuniary Damages*

HHH has moved for summary judgment on Plaintiffs' claims for non-pecuniary damages such as loss of consortium, loss of society, loss of future earnings, and mental anguish. Plaintiffs concede that they cannot recover damages for loss of consortium or loss of society. The Supreme Court has found that damages in general maritime, Death on the High Seas Act, and Jones Act wrongful death actions are limited to pecuniary loss. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32-33, 111 S Ct. 317, 325-26, 112 L. Ed. 2d 275 (1990); see also 42 U.S.C. app. § 761-62. The Supreme Court specifically held that damages for loss of society and loss of future income are not allowed, and the Fifth Circuit found that the decision also precluded recovery for loss of consortium. *See Miles*, 498 U.S. at 32-33, 37, 111 S. Ct. at 325-26, 328; *Michel v. Total Transp., Inc.*, 957 F.2d 186, 191 (5th Cir. 1992). Damages for mental anguish suffered by survivors are not available even under the less-restrictive standard applied in *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 585 n.17, 94 S. Ct. 806, 815 n.17, 39 L. Ed. 2d 9 (1974), which, before *Miles*, allowed some recovery for non-pecuniary loss. Therefore, HHH's Motion for Summary Judgment as to Plaintiffs' claims for non-pecuniary damages of loss of consortium, loss of society, loss of future earnings, and mental anguish suffered by Plaintiffs is hereby

**GRANTED**.  Plaintiffs may proceed on their claims for loss of support, loss of household services, loss of nurture and guidance to minor children, recovery for Ngo's pre-death pain and suffering (subject of course to a proof offering, if any), and any other pecuniary losses.  *See De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 141 (5th Cir. 1986); *see also Miles*, 498 U.S. at 35, 111 S. Ct. at 327 (distinguishing loss of support and loss of future earnings).

B.  *Negligence and Unseaworthiness*

HHH also contends that summary judgment should be granted on all counts because Plaintiffs have not produced evidence of negligence or unseaworthiness.  The Court respectfully but vehemently disagrees.

First, Plaintiffs have produced evidence that Ngo had worked for over 32 hours with only a few hours' rest at the time of his disappearance. (Nguyen Dep. at 51-52.)  The failure of a captain to "exercise reasonable prudence in making prior arrangements for rest periods or a substitute crew" with the result that the crew must work excessively long hours can constitute negligence.  *See Dugas v. Pelican Constr. Co.*, 481 F.2d 773, 779 (5th Cir. 1973) (crew worked 22 hours without rest); *see also Tug Mgmt. Corp. v. S.S. Harold H. Jacquet*, 330 F. Supp. 486, 496 (D.C. Pa. 1971) (finding that captain's fatigue after a 16-hour day contributed to collision between tug and barge).  Failing to provide a sufficient number of people to do a ship's work constitutes unseaworthiness.  *See Dugas*, 481 F.2d at 780.  In *Elms v. Crowley Marine Serv., Inc.*, No. C95-363Z, 1996 WL 881928, at *2 (W.D. Wash. Sept. 16, 1996), a district court found that the plaintiff's fatigue after 36 hours of work without significant rest substantially caused his fall overboard.  The court found that the vessel was unseaworthy because it was undermanned, and the court also found the defendant negligent because the captain knew of the plaintiff's fatigue but continued to have him work.  *See id*.  While Captain Nguyen testified at his

deposition that Ngo could have slept more if he had wanted to, it is undisputed that Nguyen was the one who went to wake him after only one hour of rest when he knew that Ngo had only had a few hours' sleep over the past approximately 32 hours. (Nguyen Dep. at 53.) Nguyen's supervision of Ngo was, at best, irresponsible. Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to negligence and unseaworthiness related to Ngo's lack of sleep.

Aside from that issue, though, Plaintiffs' evidence regarding Nguyen's conduct on December 4-5, 2003 demonstrates that Nguyen displayed an abject disregard for the life of Tommy Ngo. As described above, the evidence shows that Nguyen waited over an hour to call the Coast Guard and over two hours to pull up his nets and search in earnest for Ngo. A delay of that length could easily have meant the difference between life and death for Ngo, especially since he was already tired and would have had to stay afloat in the dark for about an hour before Nguyen discovered his absence, and another hour before the vessel even ceased operations.

A ship's officers have a duty to rescue a seaman who has fallen overboard and "to effect a search of the area traversed by the ship, so long as it is reasonably possible that the seaman remains alive in the water." *Reyes v. Vantage S.S. Co.*, 609 F.2d 140, 142 (5th Cir. 1980); *Abbott v. United States Lines, Inc.*, 512 F.2d 118, 121 (4th Cir. 1975) (duty to search once officers know or should know that a crewman is missing). At the time Nguyen discovered that Ngo was missing, it was reasonably possible that Ngo was still alive in the water. And any suggestion that the Captain acted reasonably in continuing to fish for another hour, on the basis of the facts thus far before the Court, is almost incomprehensible. Plaintiffs do not have to prove that Nguyen's failure to act caused Ngo's death; rather, HHH must overcome a presumption that

this delay did not contribute to his death.  *See Reyes*, 609 F.2d at 145-6; *see also Walsh v. Zuisei Kaiun K.K.,* 606 F.2d 259, 262 (9th Cir. 1979).

Plaintiffs have also presented evidence that the lack of non-skid on the deck, the condition of the rails, the location of the life vests, and the failure of Nguyen to require the use of life vests could have contributed to Ngo's death.  (Nguyen Dep. at 12-13; Pls. Ex. E.)  Plaintiffs have gone well beyond their burden of raising a genuine issue of material fact as to negligence and unseaworthiness.  Therefore, HHH's Motion for Summary Judgment is emphatically **DENIED** except as to the claims for non-pecuniary damages discussed above.

### IV. Conclusions

As explained above, HHH's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' claims for loss of consortium, loss of society, loss of future wages, and mental anguish, but HHH's Motion for Summary Judgment is **DENIED** as to all other claims.  Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED.**

**DONE** this 13th day of June 2005, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge